IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2024

## VAUGHN HARRIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2019-D-3061    Cynthia Chappell, Judge**
_____

### No. M2023-01025-CCA-R3-PC
_____

A Davidson County Grand Jury indicted Vaughn Harris, Petitioner, for two counts of coercion of a witness in case number 2019-D-3061. Petitioner also separately faced charges in case number 2013-C-2114 of attempted first degree murder (Count 1) and employing a firearm during the commission of or attempt to commit a dangerous felony (Count 2). Petitioner entered global pleas of guilty in both cases—pleading to the indictment in case number 2019-D-3061 and to reduced charges of attempted voluntary manslaughter and felon in possession of a weapon in case number 2013-C-2114. The trial court sentenced Petitioner to an effective term of six years in confinement followed by six years of community corrections. Petitioner filed a timely petition for post-conviction relief, which the post-conviction court denied after a hearing. On appeal, Petitioner alleges he was denied the effective assistance of counsel and that his guilty pleas were entered involuntarily because of coercion. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. app. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Jesse Lords, Franklin, Tennessee, for the appellant, Vaughn Harris.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Janice A. Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual and Procedural History

On May 4, 2022, Petitioner pleaded guilty to two counts of coercion of a witness in case number 2019-D-3061[1] and the reduced charges of attempted voluntary manslaughter and felon in possession of a weapon in case number 2013-C-2114 pursuant to a global plea agreement. The facts underlying Petitioner's convictions are unknown because Petitioner failed to include the transcripts from his guilty plea hearing in the appellate record.[2]

Petitioner signed a single "Petition to Enter Plea of Guilty" for the two cases. On this form, Petitioner made twenty-two acknowledgements. The following acknowledgements are pertinent to this appeal:

> 3. I received a copy of the indictment or information, which states the charge(s) against me, before I was required to plead to the charge(s). I have read and discussed the indictment or information with my attorney.
>
> . . . .
>
> 5. My lawyer has told me and I understand the definitional elements of the crime(s) I am charged with; that is, my lawyer has explained to me what the State has to prove beyond a reasonable doubt to convict a person of the offense(s).
>
> My attorney has also informed me in detail and I understand what the State's evidence against me would be in regard to the charge(s).
>
> My lawyer has explained all possible defenses I might have.
>
> . . . .
>
> 14. I understand that I am presumed innocent of the charge(s) against me, and if I went to trial, the presumption would remain with me throughout the trial unless and until overcome by all of the evidence presented by the State.

---

[1] Petitioner appealed the denial of his petition for post-conviction relief in case number 2019-D-3061, the case currently before us.

[2] Petitioner also did not include the indictments, the judgment forms, or any other court records from case number 2013-C-2114 in the record on appeal except for the global plea petition.

. . . .

16. I understand that by pleading "GUILTY," I am giving up the right I would have if I were convicted by a jury to have an appellate court review the basis of my conviction.

. . . .

19. I declare that no person has pressured, forced, threatened, or intimidated me into plead "GUILTY."

20. I believe my lawyer has done everything any lawyer could have done to represent me and I am satisfied with my legal representation and assistance in this case. I have had no problem communicating with my attorney.

. . . .

22. I know that the [c]ourt will not ordinarily accept a plea of "GUILTY" from anyone who claims to be innocent, and with that in mind, and because I make no claim of innocence, I wish to plead "GUILTY" and respectfully request the [c]ourt accept my pleas . . . .

In a written order filed the same day as Petitioner's guilty pleas, the trial court found that Petitioner understood the nature of the charges against him and the rights he was waiving by pleading guilty. It found that Petitioner's pleas were "voluntary, and not made as a result of force or threats or the promises apart from the plea[-]bargaining process." The court made these factual findings "[b]ased on the petition and certificates, and [Petitioner's] responses to questions personally addressed to him[] by the [c]ourt under oath, on the record, and in the presence of his[] attorney, together with statements made by the parties' attorneys."

The trial court imposed Petitioner's sentences in accordance with the global plea agreement. In case number 2019-D-3061, the trial court sentenced Petitioner to six years in confinement at thirty-five percent release eligibility in Count 1, and six years at thirty-five percent release eligibility in Count 2 suspended to community corrections. The court ordered Petitioner to serve those sentences consecutively to each other. In case number 2013-C-2114, the trial court sentenced Petitioner to six years in confinement at thirty-five percent release eligibility on Count 1, and a concurrent four years at thirty-five percent release eligibility on Count 2. The court ordered Petitioner to serve the sentences in case number 2013-C-2114 concurrently with the sentence on Count 1 in case number 2019-D-

- 3 -

3061 for a total effective sentence of six years in confinement followed by six years of community corrections. Also, the plea petition and judgments specify Petitioner would serve any imprisonment at a Davidson County Sheriff's Office facility.

Petitioner timely filed two petitions and a supplemental petition for post-conviction relief.[3] In them, Petitioner alleged trial counsel ("Counsel") was ineffective because "she failed to meet and confer with Petitioner to discuss the case in any meaningful way, . . . he was not provided with his discovery, . . . Counsel failed to disclose any pretrial motions to him, and . . . Counsel failed to properly investigate any potential defense witnesses." Petitioner also alleged he was "coerced into entering a plea and denied his right to a fundamentally fair trial because . . . Counsel failed to conduct an adequate investigation and was not prepared to go to trial."

On August 9, 2023, the post-conviction court held a hearing on Petitioner's claims. At the hearing, Petitioner made several allegations about Counsel's performance that contradicted what he had acknowledged in his petition to plead guilty. Petitioner testified that he asked Counsel to go to trial in their first meeting. He said he repeatedly asked Counsel for his discovery, but he never had an opportunity to review it. Petitioner stated he felt as though he was denied a fair trial because he did not receive his discovery and that he would have gone to trial had he received it. Petitioner stated he did not even know what the charges were against him, but he acknowledged that he was present for his arraignment where his attorney read out the State's charges against him.

Petitioner also claimed Counsel failed to adequately investigate his case. Petitioner stated Counsel visited him in jail "a few times." He did not feel that Counsel was "confident in her preparations for trial" and that made him nervous. Petitioner further claimed Counsel did not discuss any trial or defense strategies, or any pretrial motions that were available to him. Ultimately, Petitioner testified:

> By not having the discovery evidence, I didn't even know what the charge entailed. When I finally did receive what the charge actually entailed, what it actually meant, I realized that I hadn't committed the offense at all. At the same time, [Counsel] was saying that I had to plead guilty, I couldn't plead to anything else.

When asked, "do you remember what [Counsel] said as to why you had to plead guilty," Petitioner stated, "I don't know" and said that Counsel did not provide an explanation.

---

[3] Petitioner prematurely filed a pro-se Petition for Post-Conviction Relief on July 8, 2022. Petitioner then filed, through post-conviction counsel, an Amended and Supplemental Petition for Post-Conviction Relief on May 10, 2023. Post-conviction counsel also represents Petitioner in this appeal.

Petitioner alleged that because neither Counsel nor the State purportedly provided him discovery from his cases, he was denied a fair trial.

Petitioner acknowledged that he had multiple attorneys in case number 2013-C-2114. He agreed he admitted to a detective that he shot a man named William Chapman, the son of Petitioner's then-girlfriend, Martha Newsome; however, Petitioner claimed that he was suffering from a concussion at the time of his admission. He also claimed that Mr. Chapman attacked him first. Petitioner claimed that Ms. Newsome witnessed the altercation between Petitioner and Mr. Chapman but that she lied about what she saw. Petitioner then admitted he asked a friend to prepare two letters addressed to Ms. Newsome.

The above-referenced letters are not included in the record on appeal, but in its written order, the post-conviction court described them as "two letters on Government stationery addressed to Ms. Newsome as if the prosecuting attorney prepared them. The letters contained possible threat of charges against Ms. Newsome and gave instructions to her about how to testify falsely in his case." The post-conviction court also noted that at least one of the letters was found in Petitioner's jail cell and was not actually received by Ms. Newsome. These letters resulted in Petitioner's coercion of a witness charges in case number 2019-D-3061.

Petitioner stated that he pleaded guilty in both cases on the same day but denied understanding it was a global plea. He claimed he was "blackmailed" into pleading guilty to the coercion charges.

Counsel testified that she had been a lawyer since 2004, and since then, eighty-five to ninety percent of her practice had been criminal defense. She stated she handled about 100 criminal cases a year. Counsel stated that it is her typical practice to provide a copy of discovery to her clients via mail, e-mail, or hand-delivery once she receives it. In her entire practice of law, Counsel did not believe she "missed giving discovery to any client."

Counsel testified that she met with Petitioner ten to fifteen times through video, phone calls, and jail visits. On some of the occasions, she and her investigator met with Petitioner. Counsel described her relationship with Petitioner as "challenging" at times and said that Petitioner had a "mercurial . . . personality." Counsel agreed Petitioner would "get upset" and "raise his voice" on occasion. While it was "difficult to communicate" with Petitioner at times, later in her representation of him "it became a little easier." Counsel stated that in one three-and-a-half-hour jail visit, she discussed the investigation and discovery with Petitioner. Counsel stated the investigator also made sure Petitioner had discovery and at one point they had to switch to using a "jump drive" because Petitioner

was "clogging up the toilet" in his jail cell with the paper discovery. Counsel stated they went over the letters Petitioner wrote to Ms. Newsome "at length."

Counsel agreed that Petitioner's trial dates were set twelve times between March 4, 2013, and May 23, 2022. Counsel stated Petitioner would "seesaw" between wanting to go to trial and wanting to plead guilty, seeming "to go back and forth." Counsel testified that she prepared for trial, drafted several motions in limine and jury instructions, and even acted out her opening statement for Petitioner to "bring him into the mix." She stated that she presented drafts of those motions to Petitioner and explained to him what they meant. Counsel also stated she and Petitioner went through the plea petition, the charges, what the plea would be, and the entire plea process in "infinite detail." She also informed Petitioner that the plea agreement would avoid the service of his sentence in the custody of the Tennessee Department of Correction, which concerned Petitioner. Counsel stated that when she prepared for trial, Petitioner would insist on wanting to plead guilty; however, then Petitioner would not agree to plead guilty and insist on a new trial date instead: "if you came with a plea, he didn't want that. If you came with the trial prep, he didn't want that."

On August 11, 2023, the post-conviction court entered a detailed written order containing its findings of facts and conclusions of law pursuant to Tennessee Code Annotated section 40-35-111(b) and denied Petitioner relief. In its findings, the court found Counsel was credible and Petitioner was not credible. As to Petitioner's claim that Counsel was ineffective, the court found Counsel "was prepared to try the case" and adequately explained the case theory, jury instructions, and plea agreement to the Petitioner. The court found Counsel provided "complete discovery" to Petitioner. As to Petitioner's claim that his guilty plea was not knowing and voluntary, the court stated, "From the testimony of . . . Petitioner[,] it is clear that he is not satisfied with his plea agreement *now* and wants to use the post-conviction process as a vehicle to overturn his plea." (emphasis added). The court denied Petitioner relief on both grounds.

Petitioner filed a motion for the post-conviction court to reconsider his petition, which the court denied. Petitioner now appeals the post-conviction court's denial of his petition for post-conviction relief.

## II. Analysis

On appeal, Petitioner contends he was denied the effective assistance of counsel because he believes Counsel was unprepared for trial and that "she kept [Petitioner] in the dark about his case." As a result, Petitioner argues that Counsel coerced him into entering a guilty plea and his plea was not voluntary. The State argues Petitioner waived both of his challenges because he failed to include the transcripts from the global plea hearing, and

evidence and records from both cases that the post-conviction court relied on in making its decision. Alternatively, the State argues Counsel was effective and Petitioner's plea was voluntary.

As a preliminary matter, we must determine whether Petitioner waived his arguments by failing to provide an adequate record. It is Petitioner's duty to provide a "record which conveys a fair, accurate[,] and complete account of what transpired with respect to the issues which form the basis of the appeal." *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999) (citing Tenn. R. App. 24(b)). Because we cannot conduct a proper review without a complete record, *State v. Ballard*, 855 S.W.2d 557 (Tenn. 1993), the failure to provide an adequate record results in waiver of that issue. *Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. May 30, 1997) (first citing *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); and then citing *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990)). "[I]n the absence of an adequate record, this court must presume the trial court's ruling was correct." *State v. Worthington*, No. W2018-01040-CCA-R3-CD, 2019 WL 2067926, at *6 (Tenn. Crim. App. May 8, 1029) (citing *State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993)).

The State argues this court cannot fairly review the post-conviction court's order "without reviewing the evidence and records that the court relied on in making its decision." We agree. It is clear from the post-conviction court's order that it relied on evidence presented in Petitioner's attempted murder case. The post-conviction court noted that Petitioner negotiated a plea bargain that was "beneficial" in that he pleaded guilty to attempted voluntary manslaughter instead of the more serious charge of attempted murder. The post-conviction court's order also includes facts from the underlying charges—facts that do not appear elsewhere in the record. Petitioner also failed to include the letters, which resulted in the coercion charges, in the record even though the post-conviction court explicitly referenced them in its order denying post-conviction relief. From our review of the record, it does not appear that the guilty-plea transcript or the letters were exhibited at the post-conviction hearing and were not provided to this court.

Although Petitioner challenges the voluntariness of his guilty plea, the transcripts from the guilty-plea hearing are nowhere in the record on appeal. The trial court found Petitioner's plea was voluntary. It based this decision "on the petition and certificates, and [Petitioner's] responses to questions personally addressed to him[] by the [c]ourt under oath, on the record, and in the presence of his[] attorney, together with statements made by the parties' attorneys."

As the State correctly notes in its brief, without a complete record, we are unable to adequately review Petitioner's challenges. *See* Tenn. R. App. 24(b); *Taylor*, 992 S.W.2d at 944. Accordingly, Petitioner waived his issues by failing to provide an adequate record,

and we must presume the post-conviction court was correct. *See Worthington*, 2019 WL 2067926, at *6.

Despite Petitioner's waiver, our review of the limited record and relevant law shows that Petitioner is not entitled to relief on his claims. A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial— are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Here, Petitioner raises two claims on appeal: (1) trial counsel was ineffective because she was not prepared for trial, and she failed to advise Petitioner about his case and trial preparation; and (2) Petitioner's plea was not knowing and voluntary. Concerning Petitioner's first claim, the post-conviction court found that Counsel shared discovery with Petitioner. It also found that Counsel was prepared for trial and adequately explained the case theory, jury instructions, and plea agreement to Petitioner. It also found that Petitioner provided no evidence to support his "bare assertions" and that he was not credible. The post-conviction court found that Counsel was credible. Finally, it found that Petitioner received a beneficial plea agreement and that "it is clear that he is not satisfied with his plea agreement now and wants to use the post-conviction process as a vehicle to overturn his plea." After review, we conclude that nothing in the record before us preponderates against the post-conviction court's findings. *See also Merritt v. State*, No. W2021-01448-CCA-R3-PC, 2022 WL 17077555, at *13 (Tenn. Crim. App. Nov. 18, 2022), *perm. app. denied* (Tenn. Mar. 8, 2023) (concluding the post-conviction correctly determined trial counsel was effective when the evidence did not preponderate against its findings); *Payne v. State*, No. E2021-01017 CCA-R3-PC, 2022 WL 3683793, at *8 (Tenn. Crim. App. Aug. 25, 2022), *no perm. app. filed*.

As to Petitioner's second claim, that his plea was not voluntary and knowing, Petitioner signed a "Petition to Enter Plea of Guilty" in which he made twenty-two acknowledgments. Among these, Petitioner acknowledged Counsel "informed [him] in detail and [he] understand[s] what the State's evidence against him" would be. He also declared "that no person has pressured, forced, threatened, or intimidated" him into his plea. He acknowledged that Counsel did everything a lawyer could have done and that he was satisfied with his legal representation and assistance. Finally, Petitioner made no claim of actual innocence, which he acknowledges. Such representations and statements that Petitioner's guilty pleas were knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong

presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, Petitioner is not entitled to relief.

## III. Conclusion

After review, we affirm the judgment of the post-conviction court.

_____
MATTHEW J. WILSON, JUDGE